The court will proceed to the third case, Richardson v. CTA. Good morning, Your Honors, and may it please the Court. My name is Sherry Voyles, and I, along with my partner Taylor Muzzie, have the privilege of representing Mark Richardson in this appeal. There are two appeals pending before the Court, one on the substantive issue regarding his coverage under the ADA, and one regarding the costs that were taxed against him. I intend to focus my argument on the substantive issue unless the judges wish me to answer questions on the other matter. Mark Richardson was a 12-year employee of the CTA working as a bus operator. During that time, he performed his job safely and to standards. He was terminated in February of 2012 when CTA determined he could no longer perform his job because of his extreme obesity, and at the same time, his time in their temporary medical disability status had expired. Mark sued the CTA under the third prong of the disability definition that the CTA perceived his physical impairment and his extreme obesity to be a disability. The Court granted summary judgment based on two separate but related holdings. The first, the District Court held that as a matter of law, Mark's extreme obesity could not be a physical impairment absent an underlying cause. And based on that first conclusion, the Court went on to hold that as a matter of law that Mark could not demonstrate that the CTA perceived his extreme obesity to be such a physical impairment. We believe both conclusions are contrary to the ADA as amended and clarified by Congress in 2008. In those clarifying amendments, Congress established that the definition of disability shall be construed in favor of broad coverage of individuals under the Act. Congress also said that the point of the amendments was to return the proper emphasis to whether covered entities have complied with their obligations under the law and not on whether a person's impairment qualifies as a disability. So does that translate into your taking the position that anybody whose weight is outside the normal range, you know, would qualify as being disabled? I don't believe it does, Your Honor. I believe that on this record... Because you seem to argue that in your blue brief, in your opening brief, but then you backed off it, or it seems like you backed off it to me in the gray, in the reply brief. I think that our position is that under the facts of this case, under the plain language of the ADA and its interpretive guidelines, it does say that weight that is outside of the normal range can be an impairment. That doesn't mean it automatically is, and it certainly doesn't mean that a person is automatically covered under the law. We still have to prove that they have a disability and that there is adverse action taken against them. So I don't think it qualifies. On the legal point alone, I know we'll get into the facts here and what the record shows or doesn't show. What would you ask us to hold? How would you articulate our holding, interpreting the statute and the implementing regulations? First, I think the holding should be that there should not be an automatic exclusion for someone with extreme obesity who doesn't demonstrate a cause of that obesity. We believe the medical science is clear that obesity in and of itself is a disease. It is the physical impairment. But if stated that way, there should not be an automatic exclusion for somebody who does not demonstrate cause. That's what you just said. I think they would agree with that. No, I'm sorry if I said that's not. I'm saying they shouldn't be excluded. The District Court said if you don't demonstrate a cause of your extreme obesity, you're automatically out. That can never be a physical impairment. We think that the purpose of the ADA and certainly the amendments... So what's the test then? How do you articulate it positively, not negatively? I think you articulate it by looking at the guidelines and then you go to the next step. So what is it? How do you articulate it? If someone with extreme obesity, in this case Mark's extreme obesity, was 300% of the top end of the range, no question that this individual has extreme obesity as that is defined by the medical community and as it's defined by the National Institutes of Health. That is a physical impairment. I think in his case, it is a conclusion you can draw. So on that articulation, you articulated on the basis of weight alone. When weight hits a certain triggering point... Well, I think the medical science says it's not weight anymore. It is a disease. There is a difference between somebody's weight as a characteristic and as it moves through and it becomes extreme obesity. Is there a psychological? I mean, that's the point. Weight's just a symptom of something. Well, obesity is a symptom of many, many things and the medical science says that it affects many, many systems and it isn't of itself a psychological or an physiological condition. I do understand the concern, but all we're asking is there not be the automatic exclusion that the district court has said. We think there should be people that are included once they've reached an extreme obesity standpoint, that they shouldn't be knocked out on that particular subset of the definition of disability. The point of the amendments was to broaden this coverage and to allow people to get to the point of trying to demonstrate that their employers haven't complied with their obligations under the law. We think the district court followed the Eighth Circuit's reasoning in Morris and followed what they said about what the interpretive guidelines mean. However, we think that is a restrictive rewrite of those guidelines. The guidelines specifically say that normal weight without an underlying cause is not a physical impairment. It tells us when weight is not a physical impairment. It doesn't tell us when weight is or can be a physical impairment. We think that the Eighth Circuit's rewrite of those guidelines are improper and should not be followed. I would like to point out that as recently as September of 2018, the Ninth Circuit held that the amendments and the clarifying amendments of the ADAA do in fact apply to all the definitions of disability, including physical impairment. In our case, we know that Mark has extreme obesity. We know that because the National Institutes of Health say that if someone has a BMI over 40, they have class 3 extreme obesity. Mark was at 82.2%. Even before that, CTA's own medical services diagnosed Mark as having extreme obesity. In 2005, they noted on his record that he weighed 350 pounds. They noted that he had a diagnosis of morbid obesity and that he had sleep apnea. At 350 pounds, he was 48.8 of a BMI, still well past extreme obesity. I don't think there's any question at all about that. As a medical matter, that medical matter, they had him go to that specialist, the driving test, right? Yes, Your Honor. More importantly, their own records diagnosed him as having morbid obesity. At the time, that's what it was called. Then they continued to note those records. Sure. They'd say, of course, that's why we had him go take the driving test. That is why, but we believe that that's improper, that they did that. Not that they had him take the test, but that their results of the test were prejudicial, they were pretextual. That's what we didn't get to get to. The district court made no finding about the amount of discrimination we've alleged, the instances of discrimination. It simply cut us out from the beginning and said, you don't even get to get to that point because you can't make out a physical impairment. We believe that, contrary to what the CTA says, this isn't going to open the floodgates to litigation by people who have excess weight or even are a tiny bit obese. It's just not automatically excluding people. We think that the fact should be able to be seen by a jury and decided upon. How can you say on this record, though, that he was automatically excluded? Let me ask the question differently. Automatic exclusion, you say there should not be any automatic exclusion. What should there be, then? What should the test be? No automatic exclusion, but then what? I think you have to take the facts as they come. In this case, we're talking about extreme obesity. I don't think there's a legal standard other than the one we have from the law itself and then the guidelines that say if it's within normal weight and not the result of a cause, it's not a physical impairment. We don't have a bright line test. I don't think we can come up with one, but in this case, we're arguing this was one of those cases that it was clear that his extreme obesity constitutes a physical impairment. More importantly, the district court also, because they said he couldn't have a physical impairment without this underlying cause, held that we could not proceed on the fact that the CTA perceived Mr. Richardson to be extremely obese and that they perceived that as a medical issue. That created a very high standard for anyone who's proceeding under the regarded as prong, which is directly contrary to what the amendments said they were supposed to do. Here, even with that very high burden, we actually have evidence in this record that the CTA indeed considered his extreme obesity to be a medical issue and a medical condition. They have what is called a temporary medical disability status for folks who can no longer perform their jobs because of an illness or an injury. Following his special assessment, when the CTA decided that he couldn't perform his job because of his extreme weight, they transferred him into this temporary medical disability. We have evidence in the record that states that only people with medical issues get transferred there. They're the only ones that are entitled to have that status because it protects their job for two years before they get fired, up to three. We know that. They have an administrative procedure that they follow and it lays out the eligibility for that status. It says you have to have a medical condition and you have to have an illness or an injury that prevents you from doing your job. We believe that in our record there is a ton of evidence that establishes that they treated his extreme obesity as a medical condition. We think we're entitled to have the jury weigh all the evidence when they're determining whether or not the CTA complied with its obligations. Good morning, your honors, and may it please the court. I'm Irina Dmitrieva on behalf of the Chicago Transit Authority, CTA. Your honors, plaintiff is asking this court to make a consequential decision that will not only affect the employment practices of covered employees within this circuit, but it also has a potential to affect construction of the term disability for the other titles of the ADA concerning the practices of state and local governments and the provision of public accommodations by private entities. And plaintiff is asking this court to depart from the majority rule from the decisions of the 8th, 6th, and 2nd circuits and to become the first federal circuit to conclude that the physical characteristic of excessive weight when it reaches a certain point, and my counsel just admitted we don't know what point it is, at what point that point is reached, then the physical characteristic of excessive weight ceases to become just a physical characteristic and becomes a physical impairment for purposes of the ADA without any evidence of any underlying physiological disorder or condition. And, your honors, this morning I will explain that this court should reject the plaintiff's invitation because it contradicts the legislative intent behind the Amendments Act of 2008. It is not supported by the plain terms of the EEOC regulation defining the term physical impairment. It is not supported by the interpretive guidance. And also at bottom, the plaintiff the question of whether excessive weight by itself should constitute an impairment, which is not a neutral term at all. It is a policy issue that should properly belong to the legislative branches of the government with an opportunity for input from all stakeholders. It should not be decided by the courts. Your honors, I will also explain this morning that in this judgment record developed here, the discovery lasted for almost a year. This court does not have to decide the question whether excessive weight and obesity constitutes a physical impairment and a potential disability for the ADA. Because regardless of the answer to that question in this particular case, the summary judgment record is clear that as a matter of law, Mr. Richardson cannot satisfy the requirement of but-for causation for his disability discrimination claim and also the evidence that it is woefully insufficient for any reasonable jury to conclude that in not letting Mr. Richardson operate the bus, the CTA was motivated by animosity towards his excessive weight rather than by legitimate concerns about his inability to operate the bus safely that manifested themselves during a six-hour intensive assessment of his driving skills by two instructors. Your honors, I begin with the question of excessive weight and obesity. In amending the ADA in 2008, Congress indisputably relaxed the standard by which courts determine whether recognized physical and mental impairments rise to the level of a disability under the ADA. But there is no indication, either in the text of the amendments or in the legislative history, that Congress intended to change the very threshold term what constitutes physical impairment. And indeed, the sponsors of the legislation, it's called the Statement of Managers, put it expressly on the congressional record that they expect that the definition of the term physical impairment as promulgated by agencies such as EEOC will not change. So we have a direct instruction from Congress saying the definition of the term physical impairment as it was defined by EEOC, we expect that it will not change. And the EEOC, in fact, will not change in material respects as definition of the term physical impairment following the amendments act. And it continues to define the term physical impairment as a physiological disorder or condition affecting one or more body systems. Furthermore, the interpretive guidance makes a distinction between the term physical impairment and the physical characteristic. The guidance states it is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments. Then there is the sentence about, you know, that's phrased in the negative about which there is certain disagreement of how it should be construed. But it states that the definition of the term impairment does not include physical characteristics such as eye color, hair color, left-handedness, or height or weight that are within normal range and are not the result of a physiological disorder. But in the very next sentence it states other conditions such as pregnancy that are not the result of a physiological disorder are also not impairments. So to the extent there is any ambiguity as to whether in this negative constructed sentence the term and should be understood in the conjunctive or the disjunctive, courts routinely look at the context of the entire provision. And this context in Plaintiff is avoiding analyzing this interpretive guidance, these other sentences in its briefs. The sentence, other conditions that are not the result of a physiological disorder are also not impairments. I mean, this particular sentence cannot be clearer to me. And courts, in fact, had the chance to construe the EEOC's definition of the term physical impairment both before and after the Amendment Act. And they consistently came to the conclusion that physical characteristics of excessive weight, no matter how far beyond the norm, it constitutes a physical impairment only when there is evidence that this physical characteristic is the result of an underlying physiological disorder or condition. And Plaintiff-Richardson here did not conduct any expert discovery. He did not introduce any admissible evidence that his particular excessive weight was the result of a physiological condition or disorder. And so under the prevailing understanding of the term, I would say under the plain language of the interpretive guidance, and under the prevailing case law, he did not demonstrate that his excessive weight was an actual impairment. In other words, obesity can be, you can become obese without any underlying symptoms, psychological symptoms. The medical studies, which are actually not part of the summary judgment record, I mean, they are not that uniform. And Plaintiff cites the decision of the American Medical Association that obesity is a disease. And again, it's outside the record. It was never actually argued to the district court that obesity is a chronic disease. But there is the very committee that the AMA asked to study the question whether obesity should be recognized as a disease. The Council on Science and Public Health, the AMA, they recommended against recognizing obesity as a disease. Why? Because there is no common medical understanding as to what causes obesity. So it absolutely could be a result of a metabolic dysfunction. It could be psychological symptoms. But it also could be just a result of socioeconomic factors. It could be a result of lifestyle. There is a multitude of factors that could result in obesity. I guess that's what I'm saying. If you have someone who is quote, normal, close quote, as far as psychologically and so forth, as far as could be told, could still be obese. I do not understand the question. I'm sorry. Obesity, you're getting to that point. Yes, that the person could be obese and not have any health concerns. And actually, I would like to cite to this court the Plaintiff's own amicum that filed brief on behalf in support of the opposition. They state, obesity action coalition brief at page 26, weight of the weight is not synonymous with obesity. Weight standing alone is merely a measure of appearance. Not everyone who appears to have excess weight has the disease of obesity. And that's their own amicum. So there is this difference between chronic condition of obesity that could be a disease and a physical characteristic of excessive weight. And Mr. Richardson, it was a complete failure of proof situation. He did not introduce any. He was given a chance by the district court that denied the dismissal motion. And said, no, we're going to allow Mr. Richardson a chance to prove, to introduce evidence about his condition of excessive weight. He did not take this chance. He did not introduce any evidence at all. In cases on which he relies, like Cook from the first district, for the proposition that obesity constitutes a physical impairment and disability. The court states that there was plethora of evidence in this case that obesity was a result of metabolic dysfunction. And so, you know, Mr. Richardson did not introduce that evidence. Now I want to address the issue of perceived impairment. That Mr. Richardson did not prove, did not elicit any evidence that CTA perceived his excessive weight as anything but that. Excessive weight. A weight in excess of 400 pounds. And this number, 400 pounds, is not even a CTA internal number. It comes from the manufacturing specifications for this bus seat on CTA buses that manufactured by Recaro North America. That has a capacity, ergonomic design capacity best suited to support individuals between 100 and 400 pounds. And so CTA, being a common carrier, subject to the highest duty of care to its passengers, it was completely reasonable for the CTA, when they are alerted to the fact that the individual exceeds that upper weight limit recommendation for the bus seats, to put them through the performance assessment. And I've heard now from counsel the confirmation that under the ADA, and they do not dispute otherwise, it was completely appropriate for the CTA to conduct that driving test. Now, about the temporary medical disability area. I would not go any farther than Plaintiff's Local Rule 56, Statement of Undisputed Material Facts. It's document number 84 in the record, page 7, fact 36. On September 13, 2010, AOM which is CTA's medical provider, documented that Mark was 71 inches tall, weighed 594 pounds, and found him fit to return to work with the requirement that he be cleared by safety. Fact 37, on September 13, CTA formally transferred Mark out of temporary medical disability area and back to his full-time bus operator position at the 74th Street Garage. And in fact, 38, on September 15, CTA gave Mark classroom training, and on September 16, CTA gave him a safety assessment prior to allowing him to return to work. That's it. So on Plaintiff's own version, that somehow CTA knew about his exact weight, which it did not, because ADA prohibits medical providers from sharing information about medical diagnosis of employees with supervisors and managers. But on Plaintiff's own version, CTA with full knowledge of his height, of his excessive weight, transferred him out of temporary medical disability area and put him into the driving test. And I actually want to take this chance and again, and draw your attention to Plaintiff's response to CTA's Rule 56 Statement, which is Record 96 at pages 10-11. I mean, he doesn't even dispute that the instructor's observations about his performance were correct. Response to Fact 37, admitted that the bus instructor observed Mark's tie touch the door handle. They admit. They just disputed, presented the safety risk, but they admit it. Fact 35, admitted Plaintiff testified he did not use hand-over-hand movement before the bus instructor alerted him to the program. Fact 36, admitted Richardson did not know the term cross-pedaling. And that's a veteran bus instructor, you know, with 12 or 14 years of experience. And we explained in our briefs how important it is for the CTA as a common carrier to make sure that its bus instructors comply with standard operating procedures, because if it accidentally, Richardson would have hit the left door handle, the doors would have opened, the passengers would have fallen out of the bus while the bus is moving. I mean, if we take the flip side of this argument, and if with full knowledge of what CTA knew about the Richardson situation, that he exceeded the upper weight seat limit recommendation, that he cross-pedaled continuously, that his tie risk touching the left door handle, that he could not turn the steering wheel hand-over-hand. If we put him back into the active bus service, and an accident happened, we absolutely would have been liable for all the compensatory damages. So there was no other, you know, procedure, no other reasonable option for the CTA to take. So, do you owners have any questions, because I have 20 seconds left? We would ask that this Court affirm the summary judgment in the CTA's favor. Thank you. Thank you, Your Honors. Briefly, I would like to respond to the issue regarding the fact that Congress did not change the definition of physical impairment. The Ninth Circuit squarely said, just last September, that while that definition didn't change, the fact that Congress said, we intend to apply the entire definition of disability as broadly as possible, means that that's exactly what's supposed to be done with physical impairment. I think it kind of begs the question, though. I mean, I can interpret the amendment that way, and I may agree with you. But then, what does it lead to? That's why I was asking you the question about how do you articulate the legal standard from there? It can't just be, we have somebody that all agree is obese. We have Congress telling us to interpret the statute broadly, and therefore, the plaintiff is disabled. Well, it's not that the plaintiff's disabled. It's that the plaintiff has a physical impairment. Physical impairment that leads to the definition. And I think that is really a key part of what we're talking about, because we're parsing that. The physical impairment's part of the definition of disability. It is, it is. And we're supposed to get to the bigger definition of disability. And while there might not be a bright line, there are medical diagnoses. Mark had a medical diagnosis of morbid obesity and extreme obesity. No, there's no question about that. Right. That was one of the points. They said he didn't. He did have a medical diagnosis of that. I would also like to point out that in Cook, you know, the only difference there is the district court, I believe, was incorrect when it said that Cook had expert testimony that his extreme obesity was caused by an underlying physiological condition. The extreme obesity was the underlying physiological condition. That's what the First Circuit said. Real quickly, as well, CTA transferred Mark back into its temporary medical disability. The record demonstrates that they said he was transferred back into temporary medical disability after being found medically unfit to perform his job because of his weight. That's the CTA. That's what they said when they transferred him back into that. What if they had just transferred him back and said, he's overweight? Well, I would say, Your Honor, that we're entitled to show a jury. They wouldn't have done that. They only, CTA only gives people the ability to have their job protected for two to three years on a medical issue. I don't think they would have done that. With that, my time is up, unless there's any other questions. Thank you. Thanks to all counsel. The case is taken under advisement.